AARON M. CLEFTON, Esq.  (SBN 318680)
CLEFTON DISABILITY LAW
2601 Blanding Ave, Suite C #336
Alameda, CA 94501
Telephone:  510/832-5001
info@cleftonlaw.com

Attorneys for Plaintiff
JOHN YACCO

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| JOHN YACCO<br><br>Plaintiff,<br><br>v.<br><br>C & J COX CORPORATION,<br><br>Defendant. | CASE NO.<br>**Civil Rights**<br><br>**COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF AND DAMAGES:**<br><br>1. **Violations of Americans with Disabilities Act of 1990 Regarding Service Dogs (42 U.S.C. § 12101 *et seq.*)**<br><br>2. **Violation of the California Unruh Act (Cal. Civil Code §§ 51 and 52) Regarding Service Dogs**<br><br>3. **Violation of the California Disabled Persons Act (Cal. Civil Code § 54 *et seq.*) Regarding Service Dogs**<br><br>**DEMAND FOR JURY TRIAL** |
|---|---|

Plaintiff JOHN YACCO complains of Defendant C & J COX CORPORATION, and alleges as follows:

1.     **INTRODUCTION:**  On December 31, 2024, Plaintiff was at Kings Beach State Recreation Area enjoying the scenery with his service dog Boo for New Years Eve.  Plaintiff needed to use the restroom, but the restrooms at the beach and park were closed.  Plaintiff saw that there was a Chevron Station across the street, so he and Boo crossed the street to investigate whether they had a restroom available to use, and whether he wanted to make a purchase there.  When Plaintiff and Boo entered the Chevron Station located at 8369 N. Lake Boulevard, Kings

1

Beach, California 96143 (herein after "Chevron Station"), he saw a long line of people waiting to use the restroom. Plaintiff got in line. A few moments later several of Defendant's employees came over and asked him harassing questions about his service dog, even after he had answered the two questions Defendant is legally allowed to ask (Is this a service dog? What tasks is he trained to do for your disability?). Defendant's employees asked Plaintiff intrusive questions about his disability, questioning its validity, and whether he actually needed his dog to assist him while he was on the toilet. Further, Defendant's employees informed Plaintiff loudly in front of a large group of people that they would have to close the bathroom for cleaning after his dog had been inside.

2. Defendant's employees treated Plaintiff with disrespect and humiliated him due to the presence of his service dog. Defendant also offered qualitatively different and worse services to him than they give to other non-disabled patrons. This included but was not limited to harassing him about the presence of his service dog, embarrassing Plaintiff in front of a group of strangers by asking him personal questions, and refusing to engage in discussions with Plaintiff when he tried to enforce his right to be accompanied by a service dog while in the Chevron Station.

3. Although Plaintiff was ultimately allowed to use the restroom at the Chevron Station, Defendant's noncompliant service dog policy and poor employee training caused Plaintiff difficulty, discomfort and extreme embarrassment. Additionally, Plaintiff had to essentially cajole his way into being allowed to use the restroom inside the Chevron Station, which non-disabled patrons did not have to do, and many disabled service dog users would not have the persistence to do. Further, Plaintiff's experience of being treated very poorly and essentially having to convince Defendant to provide him even minimal service left him emotionally drained and upset. He does not want to experience the same treatment the next time he visits, so he is deterred from returning to the Chevron Station until Defendant adopts an ADA compliant service dog policy and necessary training.

4. The Defendant's decision to attempt to exclude and harass patrons who use service dogs contravenes the Department of Justice's technical assistance and guidance on the subject of

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

"Service Animals." In relevant part, the guidance states:

> When it is not obvious what service an animal provides, only limited inquiries are allowed. Staff may ask two questions: (1) is the dog a service animal required because of a disability, and (2) what work or task has the dog been trained to perform. Staff cannot ask about the person's disability, require medical documentation, require a special identification card or training documentation for the dog, or ask that the dog demonstrate its ability to perform the work or task.
>
> …
>
> - A person with a disability cannot be asked to remove his service animal from the premises unless: (1) the dog is out of control and the handler does not take effective action to control it or (2) the dog is not housebroken. When there is a legitimate reason to ask that a service animal be removed, staff must offer the person with the disability the opportunity to obtain goods or services without the animal's presence.
> - Establishments that sell or prepare food must generally allow service animals in public areas even if state or local health codes prohibit animals on the premises.
> - People with disabilities who use service animals cannot be isolated from other patrons, treated less favorably than other patrons, or charged fees that are not charged to other patrons without animals.

DOJ 2010 "Service Animal" guidance available at https://www.ada.gov/resources/service-animals-2010-requirements/.

5. As a result of Defendant's illegal acts, Plaintiff suffered denial of his civil rights and suffered physical, mental and emotional damages. Plaintiff would like to return to use the services at the Chevron Stations, but he is unable to do so with his medically necessary service dog until the policies of the gas station are made accessible to disabled individuals who use service dogs, including revision of its service dog policies and necessary employee training. He has brought this lawsuit force Defendant to change its discriminatory and illegal policies, and to

compensate him for refusing him equal access to service at the Chevron Station because he is a disabled person who needs the assistance of his qualified service dog.  Plaintiff seeks an injunction to protect the rights of all disabled persons, including Plaintiff, when accompanied by a qualified service dog at the Chevron Station.

6. **JURISDICTION:** This Court has jurisdiction of this action pursuant to 28 USC sections 1331 and 1343.  This Court has jurisdiction over the claims brought under California law pursuant to 28 U.S.C. § 1367.

7. **VENUE:** Venue is proper in this court pursuant to 28 USC section 1391(b) and is proper because the real property which is the subject of this action is located in this district and that Plaintiff's causes of action arose in this district.

8. **INTRADISTRICT:** This case should be assigned to the Sacramento Intradistrict as the real property which is the subject of this action is located in this intradistrict and Plaintiff's causes of action arose in this intradistrict.

9. **PARTIES:** Plaintiff John Yacco is a disabled individual who uses the assistance of a service dog to perform necessary tasks related to his disabilities.  Plaintiff has been diagnosed with post-traumatic stress disorder (PTSD), anxiety disorder, and panic attacks.  Plaintiff's disabilities substantially limits many of his major life activities including maintaining relationships, maintaining a consistent sleep schedule, thinking, entering any unfamiliar or unsecured space, and being in crowds.

10. Plaintiff relies upon and has trained his service dog, a rottweiler named "Boo," to assist him with certain tasks, including alerting him to people approaching from behind by nudging him, creating a personal space around Plaintiff in crowded areas, alerting Plaintiff of the onset of panic attacks and potentially harmful repetitive behaviors, precede Plaintiff into rooms to ensure space is secure, and to wake Plaintiff when he sleeps through his alarm.  Boo has been individually trained by Plaintiff as a service dog to perform these tasks with the assistance of many online resources including service dog training videos. Plaintiff reinforces that training daily.  Boo wears a vest that clearly identifies him as a service dog.  Plaintiff is a qualified person with a disability as defined under federal and state law.  42 U.S.C. § 12102, 29 U.S.C.

1  § 705(9)(B), and California Government Code § 12926(1).

2  11.   Defendant C & J COX CORPORATION, is and was at all times relevant to this
3  Complaint the owner, operator, lessor and/or lessee of the subject business known as Kings Beach
4  Chevron Station located at 8369 N. Lake Boulevard, Kings Beach, California 96143.

5  12.   The Chevron Station is a place of "public accommodation" and a "business
6  establishment" subject to the requirements *inter alia* of multiple categories of 42 U.S.C.
7  section 12181(7) of the Americans with Disabilities Act of 1990, of California Civil Code
8  sections 51 *et seq.*, and of California Civil Code sections 54 *et seq*.

9  13.   **FACTUAL STATEMENT:** Plaintiff has been working with his service dog Boo
10 for the last two years.  Boo is a rottweiler who was individually trained to be a service dog by
11 Plaintiff with guidance from online resources.  Plaintiff continues to train Boo to serve his
12 specific needs throughout their relationship.  Boo is specifically trained to alert Plaintiff to people
13 approaching from behind by nudging Plaintiff. Boo is also trained to create a personal space
14 around Plaintiff in crowded areas, alert Plaintiff of the onset of panic attacks and potentially
15 harmful repetitive behaviors by nudging him until Plaintiff breaks the repetitive behavior to
16 respond to Boo, precede Plaintiff into rooms to ensure space is secure, and to wake Plaintiff when
17 he sleeps through his alarm.

18 14.   Boo is a working dog; she is not a pet.  Plaintiff and Boo have trained extensively
19 together, and they supplement that training daily.  Plaintiff takes Boo almost everywhere with
20 him in public.  It is important they stay together as much as possible because (a) Boo provides
21 important services for Plaintiff; and (b) it is part of the training and bonding requirement that they
22 be together to maintain their bond.  With few exceptions, where Plaintiff goes, Boo goes.

23 15.   At the end of December 2024, Plaintiff was staying in a house near Incline Village
24 with a few friends to celebrate the New Year. On December 31, 2024, Plaintiff was at Kings
25 Beach State Recreation Area enjoying the scenery with his service dog Boo.  Plaintiff needed to
26 use the restroom, but the restrooms at the beach and park were closed.  Plaintiff saw that there
27 was a Chevron Station across the street, so he and Boo crossed the street to investigate whether
28 they had a restroom available to use.

16. Plaintiff and Boo entered the Chevron Station, and Plaintiff saw that there was a line for the restroom. Plaintiff and Boo got in line, and after they had been waiting for a couple of minutes, one of Defendant's employees approached Plaintiff. Defendant's employee told Plaintiff that dogs are not allowed inside the Chevron Station. Plaintiff explained that his dog is a service dog and it therefore allowed to accompany him inside gas station. Plaintiff also explained that Boo usually wears a vest identifying her as a service dog but that he had left it in the car while they were playing on the beach.

17. Defendant's employee initially told Plaintiff that it was "no problem," but then he returned later when he saw his boss approaching and told Plaintiff that his boss would probably also need to speak with him about his service dog. A second of Defendant's employees then approached Plaintiff and told him to get his dog out of the Chevron Station. Plaintiff again explained that Boo is a task trained service dog and is therefore allowed to accompany him inside the gas station. Defendant's employee then told Plaintiff that since Boo was not wearing a vest identifying him as a service dog, he would need to leave the gas station. Plaintiff informed Defendant's employee that the ADA does not require service dogs to wear any sort of vest identifying them as a service dog.

18. Defendant's employee told Plaintiff that his dog "needs a vest per the ASS," and pointed to a sign on the door. Defendant's employee continued to bully Plaintiff in an effort to get him to leave the gas station. Plaintiff continued to stand up for his right as a disabled person to be accompanied by his service dog. After much back and forth, Defendant's employee left and went inside an office inside the Chevron Station.

19. Defendant's employee returned a few minutes later and asked Plaintiff what tasks Boo performs for him. Plaintiff explained that Boo is trained as a medical response dog. Then, in front of a large group of other gas station patrons, Defendant's employee asked Plaintiff, "Are you going to take that dog into the bathroom? Do you need her to hold you up or something?" Plaintiff felt humiliated by this mockery, but indicated he would take Boo into the restroom with him but that he did not need her to "hold him up." Then, Defendant's employee announced loudly that staff would have to close the restroom for cleaning after Plaintiff's "dog" went in the

1  restroom.

2  20. Finally, Plaintiff was at the front of the line to use the restroom. He was feeling
3  very uncomfortable and embarrassed, but he also really needed to use the restroom. He decided to
4  stay at the Chevron Station to do so. The person who had been in line in front of him exited the
5  restroom, and one of Defendant's employees put a sign on the door announcing the restroom was
6  closed for cleaning. Plaintiff was worried that Defendant's employees would impede him from
7  using the restroom, but they ultimately allowed him to use the restroom after they had put the
8  signs on the door. Plaintiff used the restroom and left the gas station as quickly as possible.

9  21. Although Plaintiff was ultimately allowed to use the restroom at the Chevron
10 Station, Defendant's noncompliant service dog policy and poor employee training caused
11 Plaintiff difficulty, discomfort and extreme embarrassment. Additionally, Plaintiff had to
12 essentially force Defendant to allow him to use the restroom inside the Chevron Station, which
13 non-disabled patrons did not have to do, and many disabled service dog users would not have the
14 persistence to do.

15 22. Plaintiff has a desire to return to Kings Beach Recreation Area and therefore may
16 have the need to use the services at the Chevron Station. However, Plaintiff is reticent to go back
17 to the Chevron Station because his previous experiences have made it clear that Defendant does
18 not maintain a service animal policy that complies with state and federal access laws. It is also
19 clear that Defendant's employees have not received training about how to interact with disabled
20 patrons who rely on service dogs for assistance.

21 23. Plaintiff would like to return to use the Chevron Station. However, Plaintiff can
22 only feel comfortable returning to receive care *after* Defendant has implemented proper service
23 animal policies and training of its staff.

24
**FIRST CAUSE OF ACTION:
VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990**
25
**(42 USC §§ 12101 *et seq*.)**

26 24. Plaintiff repleads and incorporates by reference, as if fully set forth again herein,
27 the factual allegations contained in Paragraphs 1 through 23, above, and incorporates them herein
28 by reference as if separately repled hereafter.

7

25. In 1990 Congress passed the Americans with Disabilities Act after finding that laws were needed to more fully protect "some 43 million Americans with one or more physical or mental disabilities; that historically society has tended to isolate and segregate individuals with disabilities;" that "such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem"; that "the Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living and economic self-sufficiency for such individuals"; and that "the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous." 42 U.S.C. § 12101(a).

26. The ADA provides, "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, or leases to, or operates a place of public accommodation." 42 USC § 12182.

27. Plaintiff is a qualified individual with a disability as defined in the Rehabilitation Act and in the Americans with Disabilities Act of 1990.

28. The Chevron Station is a public accommodation within the meaning of Title III of the ADA. 42 U.S.C. § 12181(7)(E).

29. The ADA prohibits, among other types of discrimination, "failure to make reasonable modifications in policies, practices or procedures when such modifications are necessary to afford such goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities." 42 U.S.C. § 12182(b)(2)(A)(ii).

30. Under the "2010 Revised ADA Requirements: Service Animals," as published by the United States Department of Justice, and distributed by the DOJ's Civil Rights Division, Disability Rights Section, "Generally, title II and title III entities must permit service animals to accompany people with disabilities in all areas where members of the public are allowed to go." ADA 2010 Revised Requirements, www.ada.gov/service-animals-2010.htm. Further,

**Under the ADA, State and local governments, businesses, and nonprofit organizations that serve the public generally must allow service animals to accompany people with disabilities in all areas of the facility where the public is normally allowed to go.** For example, in a hospital it would be inappropriate to exclude a service animal from areas such as patient rooms, clinics, cafeterias, or examination rooms. However, it may be appropriate to exclude a service animal from operating rooms or burn units where the animal's presence may compromise a sterile environment.

*Ibid.*, emphasis in original

31. Defendant has a policy and practice of denying and restricting access to patrons of the Chevron Station with service animals. The Defendant's decision to attempt to exclude and harass patrons who use service dogs contravenes the Department of Justice's technical assistance and guidance on the subject of "Service Animals." In relevant part, the guidance states:

> When it is not obvious what service an animal provides, only limited inquiries are allowed. Staff may ask two questions: (1) is the dog a service animal required because of a disability, and (2) what work or task has the dog been trained to perform. Staff cannot ask about the person's disability, require medical documentation, require a special identification card or training documentation for the dog, or ask that the dog demonstrate its ability to perform the work or task.
> 
> …
> 
> - A person with a disability cannot be asked to remove his service animal from the premises unless: (1) the dog is out of control and the handler does not take effective action to control it or (2) the dog is not housebroken. When there is a legitimate reason to ask that a service animal be removed, staff must offer the person with the disability the opportunity to obtain goods or services without the animal's presence**.**
> 
> - Establishments that sell or prepare food must generally allow service animals in public areas even if state or local health codes prohibit animals on the premises.
> 
> - People with disabilities who use service animals cannot be isolated from other patrons, treated less favorably than other patrons, or charged fees that are not

9

charged to other patrons without animals.

DOJ 2010 "Service Animal" guidance available at https://www.ada.gov/resources/service-animals-2010-requirements/.

32. On information and belief, as of the date of Plaintiff's most recent visit to Taqueria Santa Cruz on or about December 31, 2024, Defendant continues to deny full and equal access to Plaintiff and to discriminate against Plaintiff on the basis of his disabilities, thus wrongfully denying to Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of Defendant's premises, in violation of the ADA.

33. In passing the Americans with Disabilities Act of 1990 (hereinafter "ADA"), Congress stated as its purpose:

> It is the purpose of this Act
>
> (1) to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;
>
> (2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities;
>
> (3) to ensure that the Federal Government plays a central role in enforcing the standards established in this Act on behalf of individuals with disabilities; and
>
> (4) to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 USC § 12101(b).

34. As part of the ADA, Congress passed "Title III - Public Accommodations and Services Operated by Private Entities" (42 USC § 12181 *et seq.*). The subject property and facility is one of the "private entities" which are considered "public accommodations" for purposes of this title, which includes but is not limited to any "sales or rental establishment." 42 USC § 12181(7)(E).

35. The ADA states that "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, or leases to, or operates a place of public accommodation." 42 U.S.C. § 12182. The specific

prohibitions against discrimination include, but are not limited to the following:

§ 12182(b)(1)(A)(ii): "Participation in Unequal Benefit. - It shall be discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals."

§ 12182(b)(2)(A)(ii): "a failure to make reasonable modifications in policies, practices, or procedures when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities...;"

§ 12182(b)(2)(A)(iii): "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied service, segregated, or otherwise treated differently than other individuals because of the absence of auxiliary aids and services...;"

§ 12182(b)(2)(A)(iv): "a failure to remove architectural barriers, and communication barriers that are structural in nature, in existing facilities... where such removal is readily achievable;"

§ 12182(b)(2)(A)(v): "where an entity can demonstrate that the removal of a barrier under clause (iv) is not readily achievable, a failure to make such goods, services, facilities, privileges, advantages, or accommodations available through alternative methods if such methods are readily achievable."

36. The acts and omissions of Defendant set forth herein were in violation of Plaintiff's rights under the ADA and the regulations promulgated thereunder, 28 C.F.R. Part 36 *et seq*.

37. The removal of each of the policy barriers complained of by Plaintiff as hereinabove alleged, were at all times herein mentioned "readily achievable" under the standards of sections 12181 and 12182 of the ADA. As noted hereinabove, removal of each and every one of the policy barriers complained of herein were already required under California law. In the event that removal of any barrier is found to be "not readily achievable," Defendant still violated the ADA, per section 12182(b)(2)(A)(v) by failing to provide all goods, services, privileges, advantages and accommodations through alternative methods that were "readily achievable."

38. On information and belief, as of the dates of Plaintiff's encounters at the premises and as of the filing of this Complaint, Defendant's actions, policies, and physical premises have denied and continue to deny full and equal access to Plaintiff and to other disabled persons who work with service dogs, which violates Plaintiff's right to full and equal access and which discriminates against Plaintiff on the basis of his disabilities, thus wrongfully denying to Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations, in violation of 42 U.S.C. sections 12182 and 12183 of the ADA.

39. Defendant's actions continue to deny Plaintiff's rights to full and equal access by deterring Plaintiff from patronizing the Chevron Station and discriminated and continue to discriminate against him on the basis of his disabilities, thus wrongfully denying to Plaintiff the full and equal enjoyment of Defendant's goods, services, facilities, privileges, advantages and accommodations, in violation of section 12182 of the ADA.  42 U.S.C. § 12182.

40. Pursuant to the Americans with Disabilities Act, 42 U.S.C. sections 12188 *et seq.*, Plaintiff is entitled to the remedies and procedures set forth in section 204(a) of the Civil Rights Act of 1964, 42 USC 2000(a)-3(a), as Plaintiff is being subjected to discrimination on the basis of his disabilities in violation of sections 12182 and 12183 of this title.  On information and belief, Defendant has continued to violate the law and deny the rights of Plaintiff and other disabled persons to "full and equal" access to this public accommodation since on or before Plaintiff's encounters.  Pursuant to section 12188(a)(2).

> [i]n cases of violations of § 12182(b)(2)(A)(iv) and § 12183(a)... injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by this title.  Where appropriate, injunctive relief shall also include requiring the provision of an auxiliary aid or service, modification of a policy, or provision of alternative methods, to the extent required by this title.

41. Plaintiff seeks relief pursuant to remedies set forth in section 204(a) of the Civil Rights Act of 1964 (42 USC 2000(a)-3(a)), and pursuant to Federal Regulations adopted to implement the Americans with Disabilities Act of 1990.  Plaintiff is a qualified disabled person for purposes of section 12188(a) of the ADA who is being subjected to discrimination on the basis of disability in violation of Title III and who has reasonable grounds for believing he will be

subjected to such discrimination each time that he may use the property and premises, or attempt to patronize the Chevron Station, in light of Defendant's policy barriers.

WHEREFORE, Plaintiff prays for relief as hereinafter stated.

### SECOND CAUSE OF ACTION:
### VIOLATION OF CALIFORNIA LAW INCLUDING: THE UNRUH ACT, CIVIL CODE SECTIONS 51 AND 52, AND THE AMERICANS WITH DISABILITIES ACT AS INCORPORATED BY CIVIL CODE SECTION 51(f)

42. Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in Paragraphs 1 through 41 of this Complaint and incorporates them herein as if separately re-pleaded.

43. At all times relevant to this action, the Unruh Civil Rights Act, California Civil Code § 51(b), provided that:

> All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, or medical condition are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

44. California Civil Code section 52 provides that the discrimination by Defendant against Plaintiff on the basis of his disability constitutes a violation of the general anti-discrimination provisions of sections 51 and 52.

45. The Chevron Station is a business establishment within the meaning of the Unruh Act. Defendant is the owner and operator of the business establishment.

46. Each of Defendant's discriminatory acts or omissions constitutes a separate and distinct violation of California Civil Code section 52, which provides that:

> Whoever denies, aids or incites a denial, or makes any discrimination or distinction contrary to section 51, 51.5, or 51.6 is liable for each and every offense for the actual damages, and any amount that may be determined by a jury, or a court sitting without a jury, up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars ($4,000), and any attorney's fees that may be determined by the court in addition thereto, suffered by any person denied the rights provided in Section 51, 51.5, or 51.6.

47. Any violation of the Americans with Disabilities Act of 1990 constitutes a violation of California Civil Code section 51(f), thus independently justifying an award of damages and injunctive relief pursuant to California law, including Civil Code section 52. Per

Civil Code section 51(f), "A violation of the right of any individual under the Americans with Disabilities Act of 1990 (Public Law 101-336) shall also constitute a violation of this section."

48. The actions and omissions of Defendant as herein alleged constitute a denial of access to and use of the described public facilities by disabled persons who use service dogs within the meaning of California Civil Code sections 51 and 52. As a proximate result of Defendant's actions and omissions, Defendant has discriminated against Plaintiff in violation of Civil Code sections 51 and 52, and is responsible for statutory, compensatory and treble damages to Plaintiff, according to proof.

49. Defendant's behavior was intentional: Defendant was aware and/or was made aware of its duties to refrain from establishing discriminatory policies against disabled persons, prior to the filing of this Complaint. Defendant's establishment of its discriminatory policy to deny and restrict entry to persons with service dogs, and its implementation of such a discriminatory policy against Plaintiff, indicate actual and implied malice toward Plaintiff and conscious disregard for his rights and safety.

50. **FEES AND COSTS:** As a result of Defendant's acts, omissions and conduct, Plaintiff has been required to incur attorney fees, litigation expenses and costs as provided by statute in order to enforce Plaintiff's rights and to enforce provisions of law protecting access for disabled persons and prohibiting discrimination against disabled persons. Plaintiff therefore seeks recovery of all reasonable attorney fees, litigation expenses and costs pursuant to the provisions of California Civil Code sections 51 and 52. Additionally, Plaintiff's lawsuit is intended to require that Defendant make its facilities and policies accessible to all disabled members of the public, justifying "public interest" attorney fees, litigation expenses and costs pursuant to the provisions of California Code of Civil Procedure section 1021.5 and other applicable law.

51. Plaintiff suffered damages as above-described as a result of Defendant's violations.

WHEREFORE, Plaintiff prays for relief as hereinafter stated.

**THIRD CAUSE OF ACTION:
DAMAGES AND INJUNCTIVE RELIEF
FOR DENIAL OF FULL AND EQUAL ACCESS TO PUBLIC FACILITIES
IN A PUBLIC ACCOMMODATION**
(Civil Code §§ 54 *et seq.*)

52. Plaintiff re-pleads and incorporates by reference, as if fully set forth hereafter, the factual allegations contained in Paragraphs 1 through 51 of this Complaint as plead infra, incorporates them herein as if separately re-pleaded.

53. Under the California Disabled Persons Act (CDPA), people with disabilities are entitled to the "full and free use of . . . public buildings, . . . public facilities, and other public places." Civil Code § 54(a).

54. Civil Code section 54.1(a)(1) further guarantees the right of "full and equal access" by persons with disabilities to "accommodations, advantages, facilities . . . hotels, lodging places of accommodation, amusement or resort, or other places to which the general public is invited." Civil Code § 54.1(c) also specifies that, "individuals with a disability and persons authorized to train service dogs for individuals with a disability, may take dogs, for the purpose of training them as guide dogs, signal dogs, or service dogs in any of the places specified in subdivisions (a) and (b)."

55. Civil Code section 54.2(a) specifically protects the right of "every individual with a disability" "to be accompanied by a guide dog, signal dog, or service dog, especially trained for the purpose, in any of the places specified in Section 54.1."

56. Civil Code section 54.3(b) makes liable "Any person or persons, firm or corporation who denies or interferes with admittance to or enjoyment of the public facilities as specified in Sections 54 and 54.1 or otherwise interferes with the rights of an individual with a disability under Sections 54, 54.1 and 54.2." This section also specifies that, "'[I]nterfere,' for purposes of this section, includes, but is not limited to, preventing or causing the prevention of a guide dog, signal dog, or service dog from carrying out its functions in assisting a disabled person."

57. The Chevron Station is a public accommodation within the meaning of the CDPA. On information and belief, Defendant is the owner, operator, lessor or lessee of the public

1 accommodation.

2 58. Defendant made the decision to knowingly and willfully exclude Plaintiff and his service dog from its public accommodation and thereby deny Plaintiff his right of entrance into its place of business with his service dog. As a result of that decision Plaintiff has faced the continuing discrimination of being barred from entering this public accommodation and place of business based upon Defendant's illegal prohibition of his legally protected use of his service dog. Plaintiff has continued to suffer denial of access to these facilities, and faces the prospect of unpleasant and discriminatory treatment should he attempt to return to these facilities. Plaintiff is unable to return to the Chevron Station until he receives the protection of this Court's injunctive relief, and he has continued to suffer discrimination on a daily basis since December 31, 2024, all to his statutory damages pursuant to California Civil Code §§ 54.1, 54.2, and 54.3.

59. **INJUNCTIVE RELIEF:** Plaintiff seeks injunctive relief to prohibit the acts and omissions of Defendant as complained of herein which are continuing on a day-to-day basis and which have the effect of wrongfully excluding Plaintiff and other members of the public who are disabled, including disabled individuals who require the assistance of service animals, from full and equal access to these public facilities. Such acts and omissions are the cause of humiliation and mental and emotional suffering of Plaintiff in that these actions continue to treat Plaintiff as an inferior and second-class citizen and serve to discriminate against him on the sole basis that he is a person with disabilities who requires the assistance of a service animal.

60. Plaintiff wishes to return to the Chevron Station but is deterred from returning to use these facilities, because the lack of access and the significant policy barriers will foreseeably cause him further difficulty, discomfort and embarrassment, and Plaintiff is unable, so long as such acts and omissions of Defendant continue, to achieve equal access to and use of these public facilities. Therefore, Plaintiff cannot return to the Chevron Station and its facilities and is deterred from further patronage until these facilities are made properly accessible for disabled persons, including Plaintiff and other disabled persons and disabled individuals who require the assistance of a service animal.

61. The acts of Defendant have proximately caused and will continue to cause

irreparable injury to Plaintiff if not enjoined by this Court.  Plaintiff seeks injunctive relief as to Defendant's inaccessible policies.  As to the Defendant that currently owns, operates, and/or leases (from or to) the subject premises, Plaintiff seeks preliminary and permanent injunctive relief to enjoin and eliminate the discriminatory practices that deny full and equal access for disabled persons, and seeks an award of reasonable statutory attorney fees, litigation expenses and costs.

62.     Wherefore Plaintiff asks this Court to preliminarily and permanently enjoin any continuing refusal by Defendant to grant full and equal access to Plaintiff in the ways complained of and to require Defendant to comply forthwith with the applicable statutory requirements relating to access for disabled persons.  Such injunctive relief is provided by California Civil Code sections 54.1, 54.2 and 55, and other laws.  Plaintiff further requests that the Court award damages pursuant to Civil Code section 54.3 and other law and attorney fees, litigation expenses, and costs pursuant to Civil Code sections 54.3 and 55, Code of Civil Procedure section 1021.5 and other law, all as hereinafter prayed for.

63.     **DAMAGES:** As a result of the denial of full and equal access to the described facilities and due to the acts and omissions of Defendant in owning, operating, leasing, constructing, altering, and/or maintaining the subject facilities, Plaintiff has suffered a violation of his civil rights, including but not limited to rights under Civil Code sections 54 and 54.1, and has suffered difficulty, discomfort and embarrassment, and physical, mental and emotional personal injuries, all to his damages per Civil Code section 54.3, including general and statutory damages, and treble damages, as hereinafter stated.  Defendant's actions and omissions to act constitute discrimination against Plaintiff on the basis that he was and is disabled and unable, because of the policy barriers created and/or maintained by the Defendant in violation of the subject laws, to use the public facilities on a full and equal basis as other persons.  The violations have deterred Plaintiff from returning to attempt to patronize the Chevron Station and will continue to cause him damages each day these barriers to access and policy barriers continue to be present.

64.     Further, although it is not necessary for Plaintiff to prove wrongful intent in order to show a violation of California Civil Code sections 54 and 54.1 or of Title III of the ADA (*see*

*Donald v. Café Royale*, 218 Cal. App. 3d 168, 177 (1990)), Defendant's behavior was intentional. Defendant is aware and/or was made aware of its duties to refrain from establishing discriminatory policies against disabled persons, prior to the filing of this complaint. Defendant's establishment of its discriminatory policy to deny and restrict entry to persons with service dogs, and its implementation of such a discriminatory policy against Plaintiff, indicate actual and implied malice toward Plaintiff and conscious disregard for his rights and safety.

65. **FEES AND COSTS:** As a result of Defendant's acts, omissions, and conduct, Plaintiff has been required to incur attorney fees, litigation expenses, and costs as provided by statute, in order to enforce Plaintiff's rights and to enforce provisions of the law protecting access for disabled persons and prohibiting discrimination against disabled persons. Plaintiff therefore seeks recovery of all reasonable attorney fees, litigation expenses, and costs, pursuant to the provisions of Civil Code sections 54.3 and 55. Additionally, Plaintiff's lawsuit is intended to require that Defendant make its facilities accessible to all disabled members of the public, justifying "public interest" attorney fees, litigation expenses and costs pursuant to the provisions of California Code of Civil Procedure section 1021.5 and other applicable law.

WHEREFORE, Plaintiff prays for relief as hereinafter stated.

**PRAYER**

Plaintiff has no adequate remedy at law to redress the wrongs suffered as set forth in this Complaint. Plaintiff has suffered and will continue to suffer irreparable injury as a result of the unlawful acts, omissions, policies, and practices of the Defendant as alleged herein, unless Plaintiff is granted the relief he requests. Plaintiff and Defendant have an actual controversy and opposing legal positions as to Defendant's violations of the laws of the United States and the State of California. The need for relief is critical because the rights at issue are paramount under the laws of the United States and the State of California.

WHEREFORE, Plaintiff John Yacco prays for judgment and the following specific relief against Defendant:

1. An order enjoining Defendant, its agents, officials, employees, and all persons acting in concert with them:

1        a. From continuing the unlawful acts, conditions, and practices described in this Complaint;

       b. To modify its policies and practices to accommodate service dog users in conformity with federal and state law, and to advise Plaintiff that his service dog will not be excluded should he desire to enter and patronize the Chevron Station;

       c. That the Court issue preliminary and permanent injunction directing Defendant as current owner, operator, lessor, and/or lessee and/or its agents of the subject property and premises to modify the above described property, premises, policies and related policies and practices to provide full and equal access to all persons, including persons with disabilities; and issue a preliminary and permanent injunction pursuant to ADA section 12188(a) and state law directing Defendant to provide facilities usable by Plaintiff and similarly situated persons with disabilities, and which provide full and equal access, as required by law, and to maintain such accessible facilities once they are provided and to train Defendant's employees and agents in how to recognize disabled persons and accommodate their rights and needs;

       d. An order retaining jurisdiction of this case until Defendant has fully complied with the orders of this Court, and there is a reasonable assurance that Defendant will continue to comply in the future absent continuing jurisdiction;

2. An award to Plaintiff of statutory, actual, general, treble, and punitive damages in amounts within the jurisdiction of the Court, all according to proof;

3. An award to Plaintiff pursuant to 42 U.S.C. § 12205, 29 U.S.C. § 794a, California Civil Code §§ 52 and 54.3, California Code of Civil Procedure § 1021.5, and as otherwise permitted by law, of the costs of this suit and reasonable attorneys' fees and litigation expenses;

4. An award of prejudgment interest pursuant to Civil Code § 3291;

5. Interest on monetary awards as permitted by law; and

6. Grant such other and further relief as this Court may deem just and proper.

//

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

| | |
|---|---|
| Date: March 26, 2025 | CLEFTON DISABILITY LAW |
| | */s/ Aaron M. Clefton* |
| | By AARON M. CLEFTON, Esq. |
| | Attorneys for Plaintiff |
| | JOHN YACCO |

**JURY DEMAND**

Plaintiff hereby demands a trial by jury for all claims for which a jury is permitted.

| | |
|---|---|
| Date: March 26, 2025 | CLEFTON DISABILITY LAW |
| | */s/ Aaron M. Clefton* |
| | By AARON M. CLEFTON, Esq. |
| | Attorneys for Plaintiff |
| | JOHN YACCO |